FRANK A. WEISER (S.B. #89780)
Attorney at Law
3460 Wilshire Blvd., #1212
Los Angeles, California 90010
(213) 384-6964  - (voice)
(213) 383-7368  - (fax)
maimons@aol.com - (e-mail)

Attorney for Plaintiffs
WILLIAM ROBERT HERRERA, MONA
MOLINA HERRERA, Individually
and on behalf of their minor child
NOELANI PILA HERRERA, WILLIAM
RYAN HERRERA; PALMDALE LODGING
LLC, a California Limited Liability
Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBERT HERRERA; MONA MOLINA HERRERA, Individually and on behalf of their minor child NOELANI PILA HERRERA; WILLIAM RYAN HERRERA; PALMDALE LODGING LLC, a California Limited Liability Company,<br><br>             Plaintiffs,<br><br>vs.<br><br>CITY OF PALMDALE, a municipal corporation; COUNTY OF LOS ANGELES, a municipal corporation; et al.,<br><br>             Defendants.<br>_____ | No. CV16-09453 MWF-FFM<br><br>OPPOSITION TO MOTION FOR ABSTENTION, OR IN THE ALTERNATIVE, MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED BY COUNTY OF LOS ANGELES<br><br><br><br><br>DATE: May 15, 2017<br>TIME: 10:00 a.m.<br>CTRM: 5A |

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . ii-vi

I.     MEMORANDUM OF POINTS AND AUTHORITIES . . . . .  2

     A. THE FAC PLEADS SUFFICIENTLY COGNIZABLE
        CLAIMS . . . . . . . . . . . . . . . . . . .  2

        1. The Fourth Amendment Violation . . . . . .  2

        2. The Procedural Due Process Violation . . .  8

        3. The Equal Protection Claim . . . . . . . .  11

        4. The Substantive Due Process Claim . . . .  15

        5. The FAC pleads a "Private Takings" Claim
           which is not subject to the Public Use
           Takings Requirements. . . . . . . . . .  16

     B. THE FAC SATISFIES THIS CIRCUIT'S PLEADING
        STANDARD WITH REGARD TO THE MONELL CLAIM . .  17

     C. THE FHA CLAIM IS COGNIZABLE . . . . . . . .  19

     D. ABSTENTION IN THIS CASE IS IMPROPER. . . . .  20

     E. THE DEPUTY SHERIFFS HAVE NOT APPEARED
        AND QUALIFIED IMMUNITY IS INAPPLICABLE
        IN A MONELL CLAIM

II.    CONCLUSION . . . . . . . . . . . . . . . . . . .  27

1

TABLE OF AUTHORITIES

Page

2

CASES

3

Alexander v San Francisco,
29 F.3d 1355 (9th Cir. 1994) . . . . . . . . . . . . . . . 7

4

5

Armanderiz v. Penman,
31 F.3d 860 (9th Cir. 1994) . . . . . . . . . . . . . . . 7

6

Armanderiz v. Penman,
75 F.3d 1311 (9th Cir. 1996)(en banc)

7

. . . . . . . . . . . . . . . . . . . . 7, 11, 12, 13, 15, 17

8

Bengini v. City of Hemet,
879 F.2d 473 (9th Cir. 1988) . . . . . . . . . . . . . 14

9

10

Camara v. Municipal Court of San Francisco,
387 U.S. 523 (1967) . . . . . . . . . . . . . . 3, 4, 5, 6

11

Canton v. Spokane School District #81,
498 F.2d 840 (9th Cir. 1974) . . . . . . . . . . . . . 22

12

13

Colorado River Water Conservation District v. United States,
424 U.S. 800 (1976) . . . . . . . . . . . . . . . . 21, 22

14

Connor v. City of Santa Ana,
897 F.2d 1487 (9th Cir. 1990) . . . . . . . . . 2, 3, 4, 5, 6

15

16

County of Allegheny v. Frank Mashuda Co.,
360 U.S. 185 (1959) . . . . . . . . . . . . . . . . . 22

17

County of Sacrmento v Lewis,
523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . 16

18

19

Crown Point Dev, Inc. v City of Sun Valley,
506 F.3d 851 (9th Cir. 2007) . . . . . . . . . . . . . 15

20

England v. Louisiana State Board of Medical Examiners,
375 U.S. 411 (1964) . . . . . . . . . . . . . . . . 23, 25

21

22

Freeman v. City of Dallas,
242 F.3d 642 (5th Cir. 2001) (en banc) . . . . . . . 4, 5, 6

23

Freeman v. City of Santa Ana,
68 F.3d 1180 (9th Cir. 1995) . . . . . . . . . . . . . 12

24

25

Gilbertson v Albright,
381 F.3d 965 (9th Cir. 2004) . . . . . . . . . . . . 24, 25

26

27

28

<u>Good Horizons, Inc. v. Deleware County, Pennsylvania</u>,
983 F.2d 1277 (3rd Cir. 1993) . . . . . . . . . . . . . . 20

<u>Havens Realty Corp. v. Coleman</u>,
455 U.S. 363 (1982) . . . . . . . . . . . . . . .    20

<u>Henry v County of Shasta</u>,
132 F.3d 512 (9th Cir. 1997) . . . . . . . . . .    19

<u>Hodel v. Virginia Surface Mining & Reclamation Ass'n</u>,
452 U.S. 264 (1981) . . . . . . . . . . . . . . .     6

<u>Honey v. Distelrath</u>,
195 F.3d 531 (9th Cir. 1999) . . . . . . . . . . 23

<u>Kawaoka v. City of Arroyo Grande</u>,
17 F.3d 1227 (9th Cir. 1994) . . . . . . . . . . 15

<u>Karim-Panihi v. Los Angeles Police Dept.</u>,
839 F.2d 621 (9th Cir. 1988) b . . . . . . . . . . 17, 18

<u>Knudsen Corp. v. Nevada State Dairy Commission</u>,
676 F.2d 374 (9th Cir. 1982) . . . . . . . . . . 21, 24

<u>Koontz v St. Johns River Water Management District</u>,
133 S.Ct. 2586 (2012) . . . . . . . . . . . . . . 15

<u>Larez v City of Los Angeles</u>,
946 F.2d 630 (9th Cir. 1991) . . . . . . . . . . 19

<u>Leppo v City of Petaluma</u>,
20 Cal.App.3d 711 (1971) . . . . . . . . . . . .     6

<u>Lingle v Chevron U.S.A., Inc.</u>,
544 U.S. 528 (2005) . . . . . . . . . . . . . . 14

<u>Lockary v. Kayfetz</u>,
917 F.2d 1150 (9th Cir. 1990) . . . . . . . . . . 12, 13

<u>Logan v. Zimmerman Brush Company</u>,
455 U.S. 422 (1982) . . . . . . . . . . . . . .     9

<u>Martinez v California</u>,
444 U.S. 277 (1980) . . . . . . . . . . . . . . 26

<u>Matthews v. Eldrige</u>,
424 U.S. 319 (1976) . . . . . . . . . . . . . . 10, 11

<u>Memphis Light, Gas, and Water Div. v. Craft</u>,
436 U.S. 1 (1978) . . . . . . . . . . . . . . . 11

iii

*Michigan v. Tyler*,
436 U.S. 499 (1978) . . . . . . . . . . . . . . . . . . 3, 4

*Midkiff v. Tom*,
702 F.2d 788 (9th Cir. 1983) . . . . . . . . . . . 25-26

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . 18, 26

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . 11

*North Am. Cold Storage Co. v. Chicago*,
211 U.S. 306 (1908) . . . . . . . . . . . . . . . . . . 6

*Oviatt v. Pearce*,
954 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . 18

*Owen v City of Independence*,
445 U.S. 622 (1980) . . . . . . . . . . . . . . . . . 26

*Parks v. Watson*,
716 F.2d 646 (9th Cir. 1983) . . . . . . . . . . . . . 8

*Patel v Penman*,
103 F.3d 868 (9th Cir. 1996) . . . . . . . . . . . 10, 18

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . 18

*Pue V. Sillas*,
632 F.2d 74 (9th Cir. 1980) . . . . . . . . . . . . . 25

*Quakenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) . . . . . . . . . . . . . . . 21, 24

*Samuels v. Meriwether*,
94 F.3d 1163 (8th Cir. 1996) . . . . . . . . . . . . . 4

*San Remo Hotel v. City and County of San Francisco*,
145 F.3d 1104 (9th Cir. 1998) . . . . . . . . . 20, 21, 22

*SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*,
309 F.3d 662 (9th Cir. 2002) . . . . . . . . . . . . 16

*See v. City of Seattle*,
387 U.S. 541 (1967) . . . . . . . . . . . . . . . . 3, 6

*Shah v. County of Los Angeles*,
797 F.2d 743 (9th Cir. 1986) . . . . . . . . . . . . 17

iv

Soldal v. Cook County, Ill.,
506 U.S. 56 (1992) . . . . . . . . . . . . . . 2, 4, 5, 6

Sorrano's Gasco, Inc. v. Morgan,
874 F.2d, 1310 (9th Cir. 1989) . . . . . . . . . . . 10

Squaw Valley Development Company v. Goldberg,
375 F.3d 936 (9th Cir. 2004) . . . . . . . . . . . 12, 13

The San Remo Hotel v. City and County of San Francisco,
27 Cal.4th 643 (2002) . . . . . . . . . . . . . . . . 26

United Parcel Service v. California Pub. Utilities,
77 F.3d 1178 (9th Cir. 1996) . . . . . . . . . . . . . 23

U.S. v. Village of Palatine, Ill.,
37 F.3d 1230 (7th Cir. 1994) . . . . . . . . . . . . 20

Village of Willowbrook v. Olech,
528 U.S. 562 (2000) . . . . . . . . . . . . . . . . . 10

Wade v Campbell,
200 Cal.App.2d 56 (1962) . . . . . . . . . . . . . . 25

Wedges/Ledges of Cal. v. City of Phoenix,
24 F.3d 56 (9th Cir. 1994) . . . . . . . . . . . . . . 8

Weinberg v. Whatcom County,
241 F.3d 746 (9th Cir. 2001) . . . . . . . . . . . . 23

Younger v Harris,
401 U.S. 37 (1971) . . . . . . . . . . . . . . 24, 25

Zinermon v. Burch,
494 U.S. 113 (1990) . . . . . . . . . . . . . . . . 11

STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . 23, 24

42 U.S.C.§ 3602(i) . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 3613(a)(1)(A) . . . . . . . . . . . . . . 19

California Code of Civil Procedure § 1094.50 . . . . . . 23

California Code of Civil Procedure § 1822.50 . . . . . . 8, 9

California Code of Civil Procedure § 1822.54 . . . . . . 8, 9

v

<u>UNITED STATES CONSTITUTION</u>

Fourth Amendment    . . . . . . . . . . . . .  2, 3, 4, 6, 7, 21

Fifth Amendment    . . . . . . . . . . . . . . . . .  15, 21

Fourteenth Amendment    . . . . . . . . . . . . . . 11, 14, 21

I.

MEMORANDUM OF POINTS AND AUTHORITIES[1]

A.      THE FAC PLEADS SUFFICIENTLY COGNIZABLE CLAIMS

1. The Fourth Amendment Violations

The Fourth Amendment provides that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated". A "seizure" of property occurs when there is a meaningful interference with an individual's possessory interest in that property." United States v Jacobsen, 466 U.S. 109, 113 (1984). The Fourth Amendment protects property interests as well as expectations of privacy. See Soldal v. Cook County, Ill., 506 U.S. 56, 69 (1992). To the extent that the FAC alleges that the City after its initial inspection of the plaintiffs' motel on November 21, 2016, came onto the motel and closed it withoujt a court order raises an issue of an unreasonable Fourth Amendment "seizure" of the motel. (FAC, paragraphs 30-33).

In Connor v. City of Santa Ana, 897 F.2d 1487 (9th Cir. 1990), the Ninth Circuit held that a search and seizure of a property to abate a known nuisance without any judicial authorization is impermissible under the Fourth Amendment. Id. at 652. Connor is faithful to prior Supreme Court precedent.

_____

[1] The First Amended Complaint will be referred to as "FAC". The defendant County of Los Angeles will be referred to as the "County".

2

In <u>Camara v. Municipal Court of San Francisco</u>, 387 U.S. 523 (1967), the Supreme Court held that satisfaction of reasonable legislative or administrative standards for inspections may be used to show "probable cause" required for an administrative warrant to enter and inspect property standard of proof different from the kind of proof needed to procure a criminal warrant to search for the fruits or instrumentalities of crime. <u>Id.</u> at 538. "[R]easonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitable restricted warrant." <u>Id.</u> at 539.

In <u>See v. City of Seattle</u>, 387 U.S. 541 (1967), decided the same day as <u>Camara</u>, the Court held that the Fourth Amendment forbids warrantless inspections of commercial structures as well as private residences. "[T]he basic component of a reasonable search under the Fourth Amendment - that it not be enforced without a suitable warrant procedure - is applicable in this context, as in others, to **business as well as to residential premises**." <u>Id.</u> at 546. (emphasis added).

In <u>Connor</u>, this circuit, citing <u>Michigan v. Tyler</u>, 436 U.S. 499 (1978), expressly held that "[e]ntry to abate a known nuisance falls within the warrant requirement of the Fourth Amendment." <u>Id.</u> at 1490.

<u>Tyler</u> dealt with an official entry to investigate the cause of a fire at a commercial structure, a furniture store. In <u>Tyler</u>, the Court held that official entries to

3

investigate the cause of a fire must adhere to the warrant procedures of the Fourth Amendment. Id. at 505-509. See Tyler, 436 U.S. at 505 ("The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public.") (citing for See for authority).

Some circuits hold the Supreme Court's holding in Soldal has overruled Camara sub silentio and replaced the warrant process required by Camara with a reasonableness balancing test. See Samuels v. Meriwether, 94 F.3d 1163, 1167-68 (8th Cir. 1996).

In Freeman v. City of Dallas, 242 F.3d 642 (5th Cir. 2001) (en banc), the Fifth Circuit held that no administrative was required to demolish an apartment building voted by an administrative board of the the City of Dallas to be a public nuisance. In Freeman, the Fifth Circuit held that "[a] warrant is unecessary when a municipality seizes property that has been declared a nuisance by means of established police power procedures." Id. at 644-45.

The Freeman en banc court expressly disagreed with this circuit's holding in Connor v. City of Santa Ana, 897 F.2d 1487 (9th Cir. 1990) that a search and seizure of a property to abate a known nuisance without any judicial authorization is impermissible under the Fourth Amendment. Id. at 652.

While the en banc majority in Freeman characterized this circuit's decision in Connor as the minority view among the circuits (adopting Judge Trott's dissent in Connor), id. at 652, the dissent in Freeman cogently argued that Connor is logically persuasive under existing Supreme Court precedent, and that the flexible standard of reasonableness can substitute for probable cause in the search for criminal evidence. As the dissent in Freeman stated: "[T]hey do not support the notion that reasonableness can substitute for the judicial warrant that is required before an administrative search or seizure of private property without consent or an emergency situation." Id., 242 F.3d at 662.

There is a circuit split on the issue. This circuit and the Sixth Circuit hold that in the context of administrative searches and seizures, compliance with reasonable legislative and administrative standards may serve as probable cause for a warrant, but not as a substitute for the warrant procedure itself; and the Fifth Circuit and Eighth Circuit hold otherwise. Freeman, 242 F.3d at 663.

Although Conner was decided before Soldal, it is consistent with that decision because it relied on Camara, and Soldal did not change Camara; rather Soldal only reaffirmed what had been established before, that the Fourth Amendment protects property as well as privacy and may protect property interests even when neither privacy not

5

liberty is at stake. Soldal, 506 U.S. at 62-71.

Connor is consistent with Camara, See, and Soldal, which plainly indicate that in the context of administrative searches and seizures, compliance with reasonable legislative and administrative standards may serve as probable cause for a warrant, but not as a substitute for the warrant procedure itself. Camara, 387 U.S. at 538; Soldal, 506 U.S. at 71. (ven under Freeman, the City has not judicially noticed that the closure was pursuant to a City Council ordinance authorizing the same).

Further, even under state law (which is not controlling here) the City's designation of a public nuisance does not necessarily make it so. Leppo v City of Petaluma, 20 Cal.App.3d 711, 718 (1971).

This circuit further holds that a civil search or seizure of property without any judicial authorization is impermissible under the Fourth Amendment even to abate a public nuisance unless a public emergency exception applies, an exception not at issue in this case. See also Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264 (1981) and North Am. Cold Storage Co. v. Chicago, 211 U.S. 306 (1908), that "[s]ummary governmental action taken in emergencies and designed to protect the public health, safety and general welfare does not violate due process. Government officials need to act promptly and decisively when they perceive an emergency, and therefore, no pre-deprivation process is due. However, the rationale for permitting

6

government officials to act summarily in emergency situations does not apply when the officials knew no emergency exists, or where they act with reckless disregard of the circumstances." <u>Armanderiz v. Penman</u>, 31 F.3d 860, 866 (9th Cir. 1994), <u>vacated in part on other grounds</u>, 75 F.3d 1311 (9th Cir. 1996) (en banc).

Plaintiffs dispute that that an emergency exception existed at the time of the closure of the motel. (FAC, paragraphs 29-31).

A Fourth Amendment issue also exists also as to the initial inspection on November 21, 2016 and the further closure in December 2016.

This circuit holds that "[t]o the extent that the defendants, in an attempt to dislodge residents suspected of criminal acts, interfered with plaintiffs possessory interest [in their motel] under the emergency provisions of the housing code, the reasonableness of the seizure is in question, since those provisions are not designed as law enforcement methods." <u>Armanderiz v. Penman</u>, 75 F.3d at 1318 (citing <u>Alexander v San Francisco</u>, 29 F.3d 1355, 1361 (9th cir. 1994)("[A]n administrative search [to determine compliance with health and building codes] may not be converted into an instrument whioch serves very different needs of law enforcement officials.")).

The allegations in the FAC raise issues that the inspection and closure of the motel was not solely to determine compliance with health and building codes but

served other law enforcement needs related to crime and evicting undesirable tenants. (FAC, 3-35, 52-60).

If so, the fact that defendants inspected the motel on November 21, 2016 with a code inspection warrant is not determinative under Ninth Circuit case law.

### 2. The Procedural Due Process violation

The process that was due in this case under the Fourteenth Amendment as a state statutory entitlement as codified in <u>California Code of Civil Procedure</u> § 1822.50 dealing with administrative warrants to close the motel.

State law in California codifies a statutory entitlement that requires a showing of cause to issue an administrative warrant based on such standards. See <u>California Code of Civil Procedure</u> § 1822.54.

Under the "statutory entitlement" doctrine, a property interest is protected under the Due Process Clause when "an individual has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." <u>Wedges/Ledges of Cal. v. City of Phoenix</u>, 24 F.3d 56, 62 (9th Cir. 1994)(internal quotation marks and citation omitted). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." <u>Id.</u> See also <u>Parks v. Watson</u>, 716 F.2d 646, 657 (9th Cir. 1983) ("We believe that a determination as to whether the public interest will be prejudiced, while obviously

8

giving a certain amount of play in the decisional process,
defines an articulable standard. At the least, the agency
would have to specify a legitimate public interest that would
be prejudiced . . . We believe that the statutory scheme
placed significant substantive restrictions on the agency's
actions so as to confer due process rights.").

Here too the decisional process under state law
and California Code of Civil Procedure § 1822.54 defines an
articulable standard that placed significant substantive
restrictions on the City's actions so as to confer due
process rights.

Independent of this, plaintiffs have a protectible
property interest in the City's adjudicatory procedures. The
Supreme Court has held that a cause of action is a species of
property protected by the Fourteenth Amendment's Due Process
Clause, and that this includes use of administrative
adjudicatory procedures. See Logan v. Zimmerman Brush
Company, 455 U.S. 422, 428-429 (1982) ("Despite appellee
Zimmerman Brush Company's arguments to the contrary, we see
no meaningful distinction between the cause of action at
issue in Mullane and Logan's right to use the FEPA's
adjudicatory procedures.").

In the case at bar, plaintiffs' motel was closed
without a warrant or valid consent and thus, their due
process rights under California Code of Civil Procedure §
1822.50 were also implicated, (FAC, paragraphs 30-33).

9

Further, this circuit has held that "[d]ue process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest." Sorrano's Gasco, Inc. v. Morgan, 874 F.2d, 1310, 1317 (9th Cir. 1989)("The Supreme Court has stated that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of [post-deprivation] procedures], can satisy the requirements of procedural due process." Id. at 1317 (internal citations and quotation marks omitted).

Plaintiffs were entitled to pre-deprivation process before the closure of the motel, or if an emergency did exist, with a prompt post-deprivation hearing. (FAC, paragraph 32). See Patel v Penman, 103 F.3d 868, 878 (9th Cir. 1996) (no evidence of providing motel owner with post deprivation hearing after closure for code violations required reversal of jury verdict in favor of City).

The procedural due process standard is analyzed under the test set forth in Matthews v. Eldrige, 424 U.S. 319 (1976):

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the addiional or substitute procedural requirement would entail." Id. a 335.

10

The Supreme Court has observed that, in applying this test, it "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990); see also Memphis Light, Gas, and Water Div. v. Craft, 436 U.S. 1, 19 (1978) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest."); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (due process includes not only right to notice but meaningful opportunity to respond).

Under the Matthews test, the plaintiffs claim a significant state entitlement in their motel business; this required specialized hearings on whether there was a factual basis for the closure. A mere determination without a hearing significantly risks an erroneous deprivation since there has been no individualized showing why they are not in compliance with City or state law.

The administrative burden on the city to conduct such a hearing is slight. Plaintiffs were entitled to either a pre-deprivation or prompt post-deprivation hearing.

### 3.   The Equal Protection Claim

The FAC alleges that the County has maliciously targeted them with over-enforcement of city regulations which is actionable in this circuit under the Equal Protection Clause. See Armanderiz at 75 F.3d at 1326 (FAC, paragraphs 13-60 but especially see paragraph 46).

Further, the previous owner and operator of the motel for years operated the motel as a nuisance and was not targeted as plaintiffs were. (FAC, paragraphs 52-60).

Plaintiffs' claim of overenforcement and not being treated the same with a similarly situated landowner by way of intentional action by the City is cognizable has been sufficiently pled. Where an equal protection claim is based on "selective enforcement of valid laws," a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for "an impermissible motive." Freeman v. City of Santa Ana, 68 F.3d 1180, 1187-8 (9th cir. 1995) (internal quotation marks and citation omitted); Armanderiz, 75 F.3d at 1327.

Although "[s]elective enforcement of valid laws, without more, does not make the defendants' action irrational," Freeman, 68 F.3d at 118, there is no rational basis for state action "' that is malicious, irrational or plainly arbitrary.'" Armanderiz, 75 F.3d at 1326 (quoting Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990) (as amended)); Squaw Valley Development Company v. Goldberg, 375 F.3d 936, 946 (9th Cir. 2004) (citing Patel, 103 F.3d 868, 876 (9th Cir. 1996) (recognizing that pretext might be shown if the city was "using its code enforcement process not to enforce compliance with the codes but rather to drive . . . downtown motels out of business")[2]; Armanderiz, 75 F.3d at

_____

[2] Plaintiff's counsel litigated the Patel case in the district court and before the circuit.

12

1327 (finding a "triable issue of fact as to whether the [city's] asserted rationale of directing efforts to enforce the housing code in hightime crime areas was merely a "pretext" to reduce property values to purchase them at a reduced rate); <u>Lockary</u>, 917 F.2d at 1155 ("Although a water moratorium may be rationally related to a legitimate state interest in controlling a water shortage" the plaintiffs raised a triable issue of fact regarding the "very existence of a water shortage.")).

As the <u>Squaw Valley</u> case stated:

> "In this circuit it is clearly established that a plaintiff may pursue an equal protection claim by raising a 'triable issue of fact as to whether the defendants' asserted [rational basis] . . . was merely a pretext' for differential treatment. <u>Armanderiz</u>, 75 F.3d at 1327 (finding equal protection case law clearly established that city officials could not target plaintiffs for overzealous enforcement of housing code); <u>Fajardo v. County of Los Angeles</u>, 179 F.2d 698, 700 n.2 (9th Cir. 1999) ('If Defendants' justification against domestic-violence crimes is nothing more than pretextual, then Defendants' actions are arbitrary and violate the Equal Protection Clause.')." 375 F.3d at 946.

The FAC alleges both prongs of the <u>Squaw Valley</u> test; that (1) the proferred rational basis was objectively false; and even if not so, that (2) the City defendants actually have acted based on an improper motive, as plaintiffs contend that their motel was not in such an emergency condition requiring immediate summary closure and that the previous owner had been operating the motel for years without incident in the way of code enforcement. (FAC,

paragraphs 29 and 31, 52-60).

In Bengini v. City of Hemet, 879 F.2d 473 (9th Cir. 1988), the evidence presented before the jury was found to be sufficient to support a conclusion that excessive and unreasonable police conduct was intentionally directed directed to Begnini's bar to force him him out of business. The testimony revealed that bar checks occurred nightly, up to five or six times per night, that customers were frequently followed from the bar and sometimes arrested, that staff and customers frequently received parking tickets, that officers parked at the old train depot across the street, and that there there were usually three or four officers there at all times of the evening, and that cars were often stopped in the vicinity of the bar for traffic violations that occurred elsewhere. Id. at 478.

The FAC alleges that from the time that plaintiffs took possession of the motel, law enforcement came onto the property at least 3-5 times daily and blocked ingress and egress at the motel. (FAC, paragraph 60).

Further, the FAC alleges that after the closure the City assiasted in obtaining a legal aid attorney in order to demand relocation costs from the plaintiffs, and improperly interfered in their franchise contract with Motel 6 that eventually led to its termination. (FAC, paragraphs 46-51).

These allegations raise serious issues of improper motive and violation of equal protection which both the City of Palmdale acted upon in concert with the County.

14

### 4.   The Substantive Due Process Claim

In a substantive due process claim, the concern is with the rationality of a government action regardless of its impact. Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1238 (9th Cir. 1994).

In order to establish a substantive due process claim, plaintiff must show that it is clearly arbitrary and unreasonable and "could have had no legitimate reason for its decision." Kawaoka, 17 F.3d at 1234 (internal quotations omitted).

As mentioned previously, in subsection 3 above, the actions of the County are irrational and arbitrary and also support a substantive due process violation. See also Crown Point Dev, Inc. v City of Sun Valley, 506 F.3d 851, 855 (9th Cir. 2007) (Ninth Circuit overturned its bar in Armanderiz on substantive due process claims for land use regulations, holding instead that the Fifth Amendment does not preclude due process claims in cases of impermissible or arbitrary land use regulations).

Further, the Supreme Court now holds that land-use conditions that are imposed by government that are coercive may be considered arbitrary and unconstitutional and require heightened scrutiny and a factual analysis. Koontz v St. Johns River Water Management District, 133 S.Ct. 2586 (2012).

Koontz was decided after the Ninth Circuit's decision in Crown Point. Under Koontz, a substantive due

15

process land-use claim as presented here requires heightened
scrutiny and cannot be decided on a motion to dismiss.

Plaintiffs know of no Ninth Circuit authority that
supports the view that a substantive due process "shock the
conscience" test applies in the land-use context. See County
of Sacrmento v Lewis, 523 U.S. 833, 846 (1998) (issue of
excessive force by police officer case); Brittain v Hansen,
451 F.3d 982, 999 (9th Cir. 2006) (interference with
visitation rights).

Under current Ninth Circuit law, the "shock the
conscience" test does not apply in the land-use context and
whether the County's actions were arbitrary or irrational
cannot be decided in a motion to dismiss.

Further, even under a "shock the conscience" test,
the FAC's allegations that an emergency basis to close the
motel did not exist; and the issues of improper motive, raise
issues under this test.

5. The FAC pleads a "Private Takings" Claim
which is not subject to the Public Use Takings
Claims Requirements

The FAC alleges a "private takings claim under the
Fifth Amendment claiming that the County's stated goals are
"pretextual" and that their true goals are improperly
motivated with the intent to drive them out of business and
close their property for eventual purchase by private
developers. (FAC, paragraph 64).

16

Under well established Ninth Circuit authority this a cognizable legal theory that does not require seeking compensation first thru state procedures. See Armanderiz v. Penman, 75 F.3d 1311, 1321 (9th Cir. 1996).

As this circuit explained in the en banc case of Armanderiz, a paradigm "private" takings claim is where the City's stated goals in code enforcement activity are found to be "pretextual" and that the true goal is improperly motivated with the intent to drive a citizen out of business and close their property for eventual purchase by private developers. Id., 75 F.3d 1321.

The County's cited authority is irrelevant to this type of claim as the authority cited deals with public use takings claims.

B.       THE FAC SATISFIES THIS CIRCUIT'S PLEADING
         STANDARDS WITH REGARD TO THE MONELL CLAIM

In this circuit, a claim of municipal liability pursuant to 42 U.S.C. §1983 is sufficient to withstand a motion to dismiss "'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" Karim-Panihi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988) (quoting Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986).

There is no case law in this circuit at present that has overturned Karim-Panihi and by what authority in this circuit this Court can simply ignore existing circuit

17

precedent. <u>Karim-Panihi</u> remains the law of this circuit until a panel or en banc court overturns it.

Notwithstanding the fact that <u>Karim-Panihi</u> remains the law of this circuit, the FAC's allegation of municipal liability is a factual allegation not a legal conclusion. See <u>Patel v. Penman</u>, 103 F.3d 868, 879-880 (9th Cir. 1996) (question of determination of official policy or policymaker is a question of law for the court to decide after it hears the evidence on the matter).

Further, a final decisionmaker's decision to close the motel satisfies the "official policy, custom, or practice," requirement under <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), see <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992); and the Supreme Court has stated that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986); see also <u>Patel</u>, 103 F.3d at 868, 878 (elected city attorney could be considered official policymaker for purposes of § 1983 action).

More significantly, the FAC pleads post insoection and closure actions by the County to (1) closing the motel without a court order; (2) not providing a post-deprivation hearing; (3) assisting tenants to obtain legal aid to make relocation claims against the plaintiffs; (4) improperly interfering with plaintiffs' Motel 6 franchise contract that led to its termination; (5) have requested to no avail that the City sign off on work done at the motel after the closure. (FAC, paragraphs 30-51).

This circuit holds that that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendanmt's policy or custom, but is highly probative with respect to that inquiry. <u>Henry v County of Shasta</u>, 132 F.3d 512 (9th Cir. 1997); <u>Larez v City of Los Angeles</u>, 946 F.2d 630, 645 (9th Cir. 1991).

The FAC meets this circuit's Monell pleading requirements.

C.     THE FHA CLAIM IS COGNIZABLE

The Federal Fair Housing Act vests "aggrieved persons" with a civil cause of action. 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" is defined as any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such a person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C.§ 3602(i).

19

Plaintiffs are "aggrieved persons" under the statute since they are providers of housing for tenants who have, at a minimum, been interefered with their housing by the City's actions. U.S. v. Village of Palatine, Ill., 37 F.3d 1230 (7th Cir. 1994) (Fair Housing action was brought against village by group home for recovering substance abusers); Havens Realty Corp. v. Coleman, 455 U.S. 363, 372, (1982) ("[T]he sole requirement for standing to sue under [the Fair Housing Act] of injury [or threatened injury] in fact."); Good Horizons, Inc. v. Deleware County, Pennsylvania, 983 F.2d 1277, 1282, n. 6 (3rd Cir. 1993) (under the FHAA, "[a]n aggrieved person 'does not necessarily have to be the person discriminated against."). (FAC, paragraphs 33-36).

The issue of the extent of disparate motive or effect redress for such injuries is not properly addressed on a motion to dismiss for failure to state a claim.

D.      ABSTENTION IN THIS CASE IS IMPROPER

Pullman abstention is applicable to land use cases, but abstention is appropriate only when (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear. See San Remo Hotel v. City and County of San Francisco, 145 F.3d at

1104 (9th Cir. 1998); see also Quakenbush v. Allstate Ins. Co., 517 U.S. 706, 716-717 (1996) (Pullman abstention proper "in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law").

Assuming, in arguendo, that Pullman abstention applies to plaintiffs' claims, it is inapplicable to their constitutional claims.

The Fourth Amendment, Equal Protection and Due Process, and Private Taking claims are not land use claims and are not subject to the scope of state writ review or traditional taking claims and these constitutional question will not be mooted or narrowed by a ruling on the validity and application of the ordinance. Pullman abstention is simply inappicable to these type of claims and to the FHA statutory claims.

As this circuit has noted in reference to applying Pullman abstention in the context of claims based on the Sherman Antitrust Act, a purely statutory claim, "one of the main principles served by the Pullman abstention doctrine is the avoidance of deciding constitutional issues." Knudsen Corp. v. Nevada State Dairy Commission, 676 F.2d 374, 377 (9th Cir. 1982).

No interest is served by exercising abstention over the Fourth Amendment or FHA claims, and in doing so, countervailing federal interests are impaired. See Colorado

River Water Conservation District v. United States, 424 U.S. 800, 813 (1976) (abstention from the exercise of federal jurisdiction "is the exception, not the rule").

And by exercising abstention over such claims, plaintiffs are exposed to further violation of their constitutional rights while the state land use issue is decided.

Nor is Pullman abstention warranted over the other federal constitutional claims. A federal court may postpone the exercise of its jurisdiction "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189 (1959); Colorado River, 424 U.S. at 814; San Remo Hotel, 145 F.3d at 1104.

Earlier cases in this circuit have worded this requirement in stronger language than San Remo Hotel, stating that in applying the Pullman abstention criteria the second requirement is that "[s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue could terminate the controversy." Canton v. Spokane School District #81, 498 F.2d 840, 845 (9th Cir. 1974) (quoting Pullman) (internal citations and quotation marks omitted) (emphasis added).

This requirement cannot be satisfied in this case.

This circuit holds that an administrative mandamus proceeding under California Code of Civil Procedure §1094.5

is a "special proceeding" and not regarded as an action at all, and thus does not bar a 42 U.S.C. § 1983 claim. See Weinberg v. Whatcom County, 241 F.3d 746, 750 (9th Cir. 2001)("'the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here [with regard to claims made under 42 U.S.C. § 1983].'"); Honey v. Distelrath, 195 F.3d 531, 533 (9th Cir. 1999) (same).

Plaintiffs read this authority to mean that even if they were successful in the state case, or if the City prevails on the mandamus action, that would not moot or narrow the issues as to the § 1983 claim.

Notwithstanding this, plaintiffs could also avoid any mootness or preclusive effect of the state supplemental claims as to the § 1983 claim by filing an England reservation in state court which is what they would do if forced to litigate the state supplemental claims in state court. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964); United Parcel Service v. California Pub. Utilities, 77 F.3d 1178, 1184 (9th Cir. 1996)("More significantly, for our purposes, this circuit has not required litigants to file first in federal court to reserve the right to a hearing under England.").

Thus, not only would the federal claims not be mooted or narrowed, once again, as argued earlier, "one of the main principles served by the Pullman abstention

23

doctrine, the avoidance of deciding constitutional issues," Knudsen Corp., 676 F.2d at 377, would not be satisfied.

Nor has the City addressed the third San Remo Hotel factor, how the possibly determinative issue of state law is doubtful. Pullman abstention is not appropriate and the FAC also pleads this. (FAC, paragraphs 33-36).

Younger abstention is also unwarranted. In Quakenbush, the Supreme Court held that federal courts have the power to dismiss or remand actions based on abstention principles only where the relief sought is equitable or otherwise discretionary but in a damages action such as this under 42 U.S.C. § 1983 it is unwarranted, rather a stay is required. Id., 517 U.S. 716-731.

Under Younger, a federal court must apply a multi-part test to determine whether it should decline to exercise its jurisdiction. Younger v Harris, 401 U.S. 37, 41 (1971). "Younger principles apply in an action for damages pursuant to 42 U.S.C. § 1983 in which the federal plaintiff brings a constitutional challenge to a state proceeding when that proceeding is ongoing; the state proceeding is of a judicial nature, implicating important state interests,; and the federal plaintiff is not barred from litigating his federal constitutional principles in that proceeding." Gilbertson v Albright, 381 F.3d 965, 984 (9th Cir. 2004).

24

Under <u>Gilbertson</u>, <u>Younger</u> abstention is inapplicable to the City's state court action for a receivership and abatement of an alleged nuisance ("Receivership Action"). (See City's Request for Judicial Notice, Exhibit "D").

The FAC alleges that in the state court proceeding, plaintiffs are not bringing a constitutional challenge to the receivership action, but in fact, have reserved their federal claims under an <u>England</u> reservation. (FAC, paragraphs 37-42).

Further, the City has not demonstrated how the constitutional claims in this case could relevant to the abatement of a public nuisance. California state law holds that "[n]either prescriptive rights, laches, nor the statute of limitatioins is a defense against the maintenance of a public nuisance." <u>Wade v Campbell</u>, 200 Cal.App.2d 56, 61 (1962). Whatever violations of civil rights, plaintiffs have suffered by the City's actions, it will not permit their maintaining a public nuisance at the motel if it exists.

Nor is there case law that even suggests that <u>Younger</u> can be applied to an FHA claim.

Moreso, <u>Younger</u> could not apply to plaintiffs Mona Herrera and her children who are not defendants in the receivership action. (See City's Request for Judicial Notice, Exhibit "D").

<u>Younger</u> does not apply in this context.

E.         THE DEPUTY SHERIFFS HAVE NOT APPEARED

           AND QUALIFIED IMMUNITY IS INAPPLICABLE

           IN A MONELL CLAIM

           Questions of the individual deputy sheriffs
qualified immunity is not before this court as such
individuals have yet to be served and appear in this
action. Plaintiffs' counsel requested from the County's
counsel that he accepy service on behalf of the individual
sheriffs and was told that he no authority to do so. Only the
County has appeared in this action.

           In a <u>Monell</u> claim, the question of qualified
immunity is not applicable. If the plaintiffs can prove
constitutional violations that were proximately caused by the
City or County's policy, custom, or practice, then the
County will be strictly liable. See <u>Owen v City of
Independence</u>, 445 U.S. 622 (1980).

           Nor can state laws immunize constitutional
violations alleged in a § 1983 claim. See <u>Martinez v
California</u>, 444 U.S. 277 (1980).

           The County's discussion of qualified immunity and
state laws immunizing the alleged constitutional violationas
is without merit.

           As the FAC pleads that the City and County acted
in concert in violating plaintiffs' civil and statutory
rights, this opposition is substantially similar to the
opposition filed against the City's motion to abstain, or in
the alternative dismiss the FAC.

26

II.

<u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the County's motion to abstain, or in the alternative, dismiss the FAC be denied.[3]

DATED: April 25, 2017          Respectfully submitted

LAW OFFICES OF FRANK
A. WEISER


By: _____
FRANK A. WEISER, Attorney for
Plaintiffs WILLIAM ROBERT
HERRERA, MONA MOLINA HERRERA,
Individually and on behalf of
their minor child NOELANI PILA
HERRERA, WILLIAM RYAN HERRERA;
PALMDALE LODGING LLC, a
California Limited Liability
Company

_____

[3] This opposition is being filed at approximately 6:00 a.m. on April 25, 2017, several hours past the deadline. Plaintiffs' counsel apologizes for the late filing as he was not feeling well last night and had to rest before working on the opposition. Plaintiffs' counsel wears an ostomy bag related to Crohn's Disease. He is also extremely backlogged in his trial and appellate work that is also related to a major car accident that he sustained on March 9, 2017.