MATTHEW R. SILVER, SBN 245528
MSilver@SilverWrightLaw.com
JOHN M. FUJII, SBN 172718
JFujii@SilverWrightLaw.com
NANCY R. TRAGARZ, SBN 156246
NTragarz@SilverWrightLaw.com
SILVER & WRIGHT LLP
3 Corporate Park, Suite 100
Irvine, CA 92606
Phone:  949-385-6431
Fax:  949-385-6428

Attorneys for Defendant
City of Palmdale

**SILVER & WRIGHT LLP**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| | |
|---|---|
| WILLIAM ROBERT HERRERA; MONA MOLINA HERRERA, Individually and on behalf of their minor child NOELANI PILA HERRERA; WILLIAM RYAN HERRERA; PALMDALE LODGING LLC, a California Limited liability company,<br><br>                  Plaintiffs,<br><br>            vs.<br><br>CITY OF PALMDALE, a municipal corporation; COUNTY OF LOS ANGELES, a municipal corporation; BUD DAVIS; GEORGE SCHNEIDER; ROB BRUCE; NARDY LOPEZ; MARK DYLER; ANNE AMBROSE; NOEL JAMES DORAN; JAMES PURTEE; SARA SHREVES; CITY OF PALMDALE OFFICER RAPOSAS; CITY OF PALMDALE OFFICER BLAKELY; CITY OF PALMDALE OFFICER ANTHONY BONELLI; CITY OF PALMDALE OFFICER MARK MILLER; DEPUTY SHERIFF MUNOZ; DEPUTY SHERIFF LEON; DEPUTY SHERIFF JACOBS; DEPUTY SHERIFF DANA; DEPUTY SHERIFF MYLES; DEPUTY SHERIFF SORROW; DEPUTY SHERIFF DIAZ; | Case No.  2:16-cv-09453-MWF-FFM<br><br>**CITY OF PALMDALE'S REPLY TO PLAINTIFFS' OPPOSITION TO PALMDALE'S MOTION FOR ABSTENTION, OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**[Fed. Rule of Civil Procedure 12(b)(6); 12(b)1); and Abstention]**<br><br>Hearing Date:        May 15, 2017<br>Time:                     10:00 a.m.<br>Courtroom:            5A |



DEPUTY SHERIFF ARCIDIANCONO; DEPUTY SHERIFF DOLLENS; DEPUTY SHERIFF BRANDON, DEPUTY SHERIFF GALLAGHER; DEPUTY SHERIFF WALDEN; DEPUTY SHERIFF DOE 1, all such individual defendants sued in their individual and official capacity; DOES 2-10 INCLUSIVE,

Defendants.

SILVER & WRIGHT LLP

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................... p. 1

II. THE COURT SHOULD ABSTAIN UNDER *YOUNGER* FROM HEARING THIS CASE IN LIGHT OF THE PENDING STATE COURT NUISANCE ABATEMENT PROCEEDINGS INVOLVING THE SAME FACTS ........................................ p. 5

  A. All Claims Arising From The Same Event Must Be Submitted To State Court ................................................ p. 6

  B. The Parties Do Not Have To Be Identical Under *Younger* ...... p. 6

  C. The Court Can Apply Younger Abstention To Plaintiffs' Fair Housing Act Claims ........................................ p. 8

III. PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENTLY COGNIZABLE CLAIMS FOR VIOLATION OF THEIR CIVIL RIGHTS UNDER 42 U.S.C. SECTION 1983 .................... p. 9

  A. Plaintiffs Have Failed To State A Claim For Violation Of Their First Amendment Right Of Access Under Petition For Grievances ............... p. 9

  B. Plaintiffs Have Failed To State A Claim For Violation Of Their Fourth Amendment Rights .................................. p. 9

  C. Plaintiffs Have Failed To State A Claim For A Fifth Amendment Takings And A Takings Claim Is Not Ripe For Adjudication ............. p. 14

  D. Plaintiffs Have Failed To State A Claim For Violation Of Procedural Due Process ................................................ p. 15

  E. Plaintiffs Have Failed to State A Claim For Violation Of Substantive Due Process ................................................ p. 17

  F. Plaintiffs Have Failed To State A Claim For Violation Of The Equal Protection Clause .......................................... p. 19

  G. Plaintiffs Have Failed To State A Claim For Violation Of The Contract Clause .............................................. p. 20

SILVER & WRIGHT LLP

**IV. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A FEDERAL CIVIL RIGHTS CLAIM AGAINST THE CITY PURSUANT TO *MONELL*** ................................................................ p. 21

**V. PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THEIR CIVIL RIGHTS UNDER 42 U.S.C. SECTION 3604, AND THE COURT SHOULD DISMISS IT WITHOUT LEAVE TO AMEND** ........... p. 23

**VI. CONCLUSION** ............................................................................. p. 24

SILVER & WRIGHT LLP

## TABLE OF AUTHORITIES

### CASES

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012) ................ p. 21

*Anderson v. Smith*, No. 1:06-cv-1795 OWW SMS, 2009 WL 2139311 (E.D. Cal. July 10, 2009)..................................................................................................... p. 18

*Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) ......................................... p. 14, 20

*Berman v. Parker*, 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27] (1954) ........................... p. 14

*Brigham City, Utah v. Stuart,* 547 U.S. 398 [126 S.Ct. 1943, 164 L.Ed.2d 650] (2006) ...................................................................................................... p. 14

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006) ............................................... p. 17, 18

*California v. Ciraolo*, 476 U.S. 207 [106 S.Ct. 1809, 90 L.Ed.2d 210] (1986)......... p. 10

*City of Canton v. Harris*, 489 U.S. 378 [109 S.Ct. 1197, 103 L.Ed.2d 412] (1989) ................................................................................................................... p. 22

*City of Fort Lauderdale v. Scott*, 773 F.Supp.2d 1355 (S.D. Fla. 2011)................... p. 24

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 [96 S.Ct. 1236, 47 L.Ed.2d 483] (1976). ................................................................. p. 5

*Conner v. City of Santa Ana*, 897 F.2d 1487 (9th Cir. 1990) ................... p. 3, 11, 12, 16

*Corales v. Bennett,* 567 F.3d 554 (9th Cir. 2009) ................................................... p. 18

*County of Sacramento v. Lewis*, 523 U.S. 833 [118 S.Ct. 1708, 140 L.E.2d 1043] (1998) ...................................................................................................... p. 17, 18

*Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) ........... p. 14

*Dortch v. Reid,* No. 5:14-cv-01983-CAS(VBK), 2015 WL 179791 (C.D. Cal. Jan. 12, 2015) .......................................................................................... p. 7, 8

*Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 [128 S.Ct. 2146, 170 L.Ed.2d 975] (2008).................................................................................. p. 19

*FCC v. Beach Communications, Inc.*, 508 U.S. 307 [113 S.Ct. 2096, 124 L.Ed.2d 211] (1993) ...................................................................................................... p. 20

SILVER & WRIGHT LLP

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) .............................. p. 19, 20

*Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001).......................................... p. 13

*Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).......................................... p. 5, 6, 8

*Growth Horizons, Inc. v. Delaware County Pennsylvania,* 983 F.2d 1277 (3rd
    Cir. 1993) ........................................................................................................ p. 23

*Hartmann v. California Dept. of Corrections & Rehabilitation*, 707 F.3d 1114
    (9th Cir. 2013)................................................................................................. p. 19

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 [102 S.Ct. 1114, 71 L.Ed.2d 214]
    (1982) ............................................................................................................... p. 23

*Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 [104 S.Ct. 2321, 81 L.Ed.2d
    186] (1984)....................................................................................................... p. 14

*Hroch v. City of Omaha,* 4 F.3d 693 (8th Cir. 1993) .......................................... p. 13

*Juidice v. Vail*, 430 U.S. 327 [97 S.Ct. 1211, 51 L.Ed.2d 376] (1977) .................. p. 6, 8

*Karim-Oabugu v. Los Angeles Police Dept.*, 839 F.2d 621 (9th Cir. 1988) ............. p. 21

*Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994).......................... p. 19

*Koontz v. St. Johns River Water Management District*, __U.S.__ [133 S.Ct. 2586,
    186 L.Ed. 697] (2013)...................................................................................... p. 17

*Lebbos v. Judges of Superior Court, Santa Clara County*, 883 F2d 810 (9th Cir.
    1989) .................................................................................................................. p. 8

*Lindsey v. Normet*, 405 U.S. 56 [92 S.Ct. 862, 31 L.Ed.2d 36] (1972) .................. p. 18

*M&A Gabaee v. Community Redevelopment Agency of City of Los Angeles*, 419
    F.3d 1036 (9th Cir. 2005) ................................................................................. p. 5

*Mincey v. Arizona*, 437 U.S. 385 [98 S.Ct. 2408, , 57 L.Ed.2d 290] (1978) ............ p. 14

*Monell v. Dept. of Social Services of New York,* 436 U.S. 658 [98 S.Ct. 2018, 56
    L.Ed.2d 61] (1978)........................................................................................... p. 21

*Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007)........................... p. 16

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ..................................................... p. 22

SILVER & WRIGHT LLP

**SILVER & WRIGHT LLP**

*Patel v. City of Montclair*, 798 F.3d 895 (9th Cir. 2015) ...................................... p. 10, 12

*Patel v. Penman,* 103 F.3d 868, 878 (9th Cir. 1996) ................................................ p. 16

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 [107 S.Ct. 1519, 95 L.Ed.2d 1] (1987)......... p. 8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................ p. 21

*Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ...................... p. 19

*U.S. v. Jacobsen*, 466 U.S. 109 [104 S.Ct. 1652, 80 L.Ed.2d 85] (1984) ................. p. 11

*U.S. v. Village of Palatine, Ill.*, 37 F.3d 1230 (7th Cir. 1994).................................... p. 23

*U.S. v. Martinez*, 406 F.3d 1160 (9th Cir. 2005) ....................................................... p. 13

*Walnut Hill Estate Enterprises, LLC v. City of Oroville*, N. 2:08-cv-01142 FCD
    GGH, 2009 WL 3781038 (E.D. Cal. 2009), *aff'd* 407 Fed.Appx. 168 (9th
    Cir. 2010) ....................................................................... p. 18, 19, 20

*Younger v. Harris* (1971) 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971) ....... p. 4, 5

**CONSTITUTION**

Cal. Const. art. XI, § 7 .................................................................................... p. 13

**FEDERAL STATUTES**

42 U.S.C. § 3604.................................................................................................... p. 22

**STATE STATUTES**

Cal. Civ. Code § 1822.5....................................................................................... p. 10

Cal. Gov't Code § 38771 ...................................................................................... p. 13

Cal. Health & Safety Code § 1780 ....................................................................... p. 13

Cal. Health & Safety Code § 1780.6 ..................................................................... p. 13

**MUNICIPAL STATUTES**

Palmdale, Cal., Municipal Code ch. 8 ................................................................... p. 13

**CITY OF PALMDALE'S REPLY TO PLAINTIFFS' OPPOSITION TO PALMDALE'S MOTION FOR ABSTENTION, OR, IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.   INTRODUCTION.

This case is about protecting the health, safety, and welfare of guests and the public of an approximately 50-unit slum motel located at 217 E. Palmdale Boulevard, Palmdale, California 92530, Assessor's Parcel Numbers 3008-024-005 and 3008-024-034 ("Subject Property"). The Subject Property has been the subject of numerous complaints regarding unsafe and hazardous conditions.

On or about December 13, 2016, the City issued a Notice and Order to Repair or Abate ("N&O") identifying 427 violations and ordering that all violations be fully repaired or abated within 30 calendar days, on or before January 12, 2017 ("Compliance Deadline"). Among other violations and imminently dangerous conditions, many units on the Subject Property have suffered extensive water damage to the roof and ceiling that undermines the structural integrity of the building and risks collapse. The Subject Property lacks safe and effective weatherproofing which allows further water, wind, and other exterior elements to cause damage and create uninhabitable conditions within the motel units. The second-floor walkway is also extremely substandard and imminently dangerous. Significant unpermitted construction has also taken place on the Subject Property, including, but not limited to, unpermitted electrical, plumbing, and construction work within multiple rooms of the motel, unpermitted stairway storage rooms, and other substantial unpermitted work within many units. Unpermitted construction is unlawful, per se substandard, and often contains hidden and latent defects that increase the risk of partial or total structural collapse. (See Request for Judicial Notice filed with Motion ("RJN"), Ex B [N&O].)

Health and sanitation hazards also create extremely dangerous conditions on the Subject Property. Severe accumulation of junk, trash, and debris—including construction

SILVER & WRIGHT LLP

materials, plastic bags, cartons, boxes, water bottles, food containers, piles of clothing, and other discarded items—were discovered in many units.  These accumulations create harborages for rodents and insects and other transmitters that can carry dangerous diseases and pose very real health hazards.  Improperly maintained and/or non-functioning bathroom sinks, toilets, and showers, broken ventilation systems, misuse of kitchen appliances, and improper food storage also cause safety and sanitation hazards on the Subject Property.  (See RJN, Ex B [N&O].)

Missing and inoperable smoke and carbon monoxide alarms on the Subject Property also create severe fire hazards, especially in a large occupied multi-unit motel.  Windows are improperly barred, and exit access routes are obstructed thereby preventing adequate and necessary egress in the event of a fire or other emergency.  These dangerous conditions exist in addition to the improperly maintained and/or malfunctioning fire alarm system at the Subject Property.  The unsafe storage of combustible materials combined with the absence of required portable fire extinguishers aggravate the risk and severity of a fire igniting upon the Subject Property, creating an emergency condition and imminent danger to the occupants – past, present, and future – as well as to anyone on the Subject Property, neighboring properties, and emergency responders.  (See RJN, Ex B [N&O].)

The Subject Property also contains numerous electrical, plumbing, and mechanical hazards.  Electrical outlets are missing protective covers and contain exposed wiring, which pose shock hazards and create sources of ignition.  Light switches are missing required faceplates.  Extension cords are being used improperly to substitute for permanent wiring.  Unpermitted wiring and conduit installations are also substandard and unlawful.  Inadequate ventilation systems and missing vent fan covers create further mechanical hazards that can pose risk of dislodgment and injury and contribute to further health and sanitation risks.  (See RJN, Ex B [N&O].)

A massive number of other unlawful and substandard conditions, and public nuisances, also plague the Subject Property, including, but not limited to, deteriorated exterior paint and stucco, a dilapidated block wall, damaged driveway, missing handicap

– 2 –

CITY'S REPLY TO PLAINTIFFS' OPPOSITION TO CITY'S MOTION FOR ABSTENTION
OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

SILVER & WRIGHT LLP

parking signs, set back violations, graffiti, improper landscaping, and many other conditions.  (See RJN, Ex B [N&O].)

On or about January 13, 2017, the City re-inspected the Subject Property and confirmed that nearly all the unlawful and dangerous conditions remain on the Subject Property, and also discovered new violations.  (RJN, Ex. D [City's State Court Complaint § 19].)

This case is about public safety, not land use.  Plaintiffs are slumlords and are abusing the judicial system by filing this meritless case in federal court to interfere with the pending state proceedings to bring the Subject Property into a safe condition.  There is no requirement for a warrant to post a Notice to Vacate a dangerous building on the doors of a motel, nor have Plaintiffs cited any such case.  Instead, Plaintiffs cite to *Conner v. City of Santa Ana*, 897 F.2d 1487, 1489 (9th Cir. 1990) for the proposition that "entries onto private land to search for and abate suspected nuisances" require issuance of a warrant.  *Conner* has no application here because the City's conduct to close and vacate the Subject Property is not itself an action to abate a nuisance or a seizure under the Fourth Amendment.  Rather, the City's actions were undertaken to protect the public from imminent health and safety hazards and dangerous emergencies as authorized by statutes.  The situation in *Conner* was quite different where police broke down a private fence to abate a nuisance by removing two vehicles that clearly were not posing any emergency threat to the safety and lives of the public.

It is fully within the City's police powers to vacate a building filled with substantially dangerous emergency threats to the safety and lives of the motel occupants and public.  There was no unreasonable seizure of the motel.  The City has not taken possession of the motel or abated any nuisances the Subject Property.  Plaintiffs still own the motel and have access to the motel to make the repairs.  The City filed a state court petition for the Superior Court to appoint a receiver to address the nuisances on the Subject Property, which is currently pending.  Hence, as a matter of law, Plaintiffs have failed to state a violation of the Fourth Amendment for an unreasonable search or seizure.

SILVER & WRIGHT LLP

Furthermore, there was no "taking" of the Subject Property as Plaintiffs still own the Subject Property and have the right to make the repairs so the motel may be reopened. Hence, as a matter of law, Plaintiffs have failed to state a Fifth Amendment "takings" claim.

Likewise, Plaintiffs' substantive due process, procedural due process, and equal protection claims also fail to state a claim for which relief can be granted. There is nothing shocking about the City posting a Notice to Vacate at the Subject Property. As a matter of law, Plaintiffs cannot show the City did not have any legitimate reason for its decision to vacate the Subject Property and have failed to state a claim for violation of Substantive Due Process. Clearly there is no procedural due process, as the matter is pending in state court. Hence, Plaintiffs have the full procedural due process of a state court action and as a matter of law cannot state a claim for violation of Procedural Due Process. There is also no equal protection violation as the Ninth Circuit has held that a municipality has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code.

Plaintiffs also have failed to cite any authority that a city's actions in enforcing its police powers to post a Notice to Vacate and allegedly vacate an unsafe motel can possibly violate the Fair Housing Act. The City was not engaged in selling or financing real property. Nor is this a zoning case. Hence, Plaintiffs cannot state a claim for violation of the Fair Housing Act.

Even assuming Plaintiffs could assert that some constitutional violation occurred (which they cannot do), Plaintiffs' FAC falls far short of stating a claim against the City by satisfying the pleading requirements of *Monell*. To plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Plaintiffs' FAC fails to state what the "official policy, custom or practice" is.

This Court should dismiss the case with prejudice or in the alternative abstain from

SILVER & WRIGHT LLP

hearing this action pursuant to *Younger v. Harris*, 401 U.S. 37, 49-53 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), because it would frustrate the state's interest in administering its judicial system and interfere with the state court action. **Abstention is proper because litigating both cases at the same time could lead to inconsistent rulings in the state court action and this action as the issues in this action will be litigated in the state court action.** In contrast, abstention would not prejudice Plaintiffs because they can fully litigate their alleged claims in the pending state court action.

## II.   THE COURT SHOULD ABSTAIN UNDER *YOUNGER* FROM HEARING THIS CASE IN LIGHT OF THE PENDING STATE COURT NUISANCE ABATEMENT PROCEEDINGS INVOLVING THE SAME FACTS.

Contrary to Plaintiffs' arguments, *Younger*[1] abstention is appropriate in this case. Plaintiffs spend four pages in their opposition arguing against *Pullman* abstention, which was not even raised in the City's motion. Plaintiffs also refer to the *Colorado River*[2] abstention doctrine, which is another red herring not raised by the City. Plaintiffs are simply trying to confuse the court because *Younger* abstention does apply. "A federal court must abstain to avoid interference in a state-court civil action when three tests are met. First, the proceedings must implicate important state interests; second, there must be ongoing state proceedings; and third, the federal plaintiff must be able to litigate its federal claims in the state proceedings." (*M&A Gabaee v. Community Redevelopment Agency of City of Los Angeles*, 419 F.3d 1036, 1039 (9th Cir. 2005).) In *M&A Gabaee*, a real estate development partnership brought civil rights actions to enjoin a redevelopment agency from acquiring partnership property through eminent domain. The Ninth Circuit found that *Younger* abstention required the district court to dismiss plaintiff's two federal lawsuits because of the eminent domain proceedings taking place in California state court. As set forth in the City's moving papers, the City has satisfied

---

[1] *Younger v. Harris*, 401 U.S. 37, 49-53 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971).

[2] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 [96 S.Ct. 1236, 47 L.Ed.2d 483] (1976).

SILVER & WRIGHT LLP

the requirements of *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004) for the application of *Younger* abstention.   In the FAC, Plaintiffs seek damages and both declaratory and injunctive relief regarding the City's actions with respect to the same Subject Property that is the subject of dispute in the state court action.   Second, there are ongoing state proceedings, and no substantive proceedings have occurred in this action. Third, Plaintiffs can bring their federal claims in the state court action.

### A.    All Claims Arising From The Same Event Must Be Submitted To State Court.

Contrary to Plaintiffs' arguments in their opposition, *Younger* abstention is applicable to the City's state court action for a receivership and abatement of a nuisance. In fact, a federal plaintiff must submit all claims **arising from the same event or transaction, including any federal claims,** to the state court.   Thus, *Younger* abstention may apply **even if the federal issue is not raised in the pending state proceedings**. "[Federal plaintiffs] need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings … [T]heir failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." (*Juidice v. Vail*, 430 U.S. 327, 337 [97 S.Ct. 1211, 1218, 51 L.Ed.2d 376] (1977).)   "*Younger* requires no more than an opportunity for the presentation of federal constitutional claims in the state proceeding.… State courts are competent to adjudicate federal constitutional claims." (*Gilbertson*, *supra*, 381 F.3d at 972.)

All of Plaintiffs' claims in this action arise directly out of the City's abatement process.   If the City would have never started the abatement process, Plaintiffs would not have any of the claims alleged in the FAC.   Plaintiffs can fully litigate those claims in state court via a cross-complaint.   As noted in *Juidice,* the fact that Plaintiffs have failed to avail themselves of their opportunity to file a cross-complaint in the state court action and have filed an *England* reservation does not prevent this Court from abstaining.

### B.    The Parties Do Not Have To Be Identical Under *Younger.*

Contrary to Plaintiffs' arguments, *Younger* does not require that the parties in the

SILVER & WRIGHT LLP

1   two cases are identical.  It only requires that the parties have the opportunity to pursue

2   their claims in the state court action.

3          The Central District of California has already ruled on this issue.  In *Dortch v. Reid*,

4   No. 5:14-cv-01983-CAS(VBK), 2015 WL 179791 at *1 (C.D. Cal. Jan. 12, 2015), law

5   enforcement officers entered the Dortches' home and conducted a search lasting

6   approximately 7.5 hours.  During the search, David Dortch, two of the Dortches' minor

7   children, as well as a third party were detained and not free to leave the premises.  For a

8   majority of the time the search was ongoing, David Dortch was handcuffed to a chair.

9   David Dortch ("Dortch"), David A. Dortch, O.D., a California Professional Optometric

10  Corporation dba Spectrum Vision Center ("Spectrum"), Kimberly Dawn Dortch, Maycie

11  Dortch, and Z.D., a minor by his parents/guardians David and Kim Dortch (collectively,

12  the "Dortches"), filed a civil lawsuit against the City of Murrieta, the Murrieta Police

13  Department, and two police officers challenging the propriety of the City of Murrieta

14  defendants' conduct related to the search.  The district court held:

15         [T]he claims of the other family members are based on the same operative

16         facts leading up to Dortch's arrest and criminal charges.  For example, in

17         addition to Dortch, his wife, Kimberly, and children, Maycie and Z.D., also

18         claim that the April 20, 2013 search was unreasonable.  An adjudication of

19         the other family members' claims also risks interfering with the state

20         criminal case in the manner prohibited by *Younger*.  Moreover, permitting

21         family members to litigate their claims on a piecemeal basis would not

22         promote judicial economy and **would create a risk of inconsistent results**

23         **in the instant case**.

24         Based on the foregoing, the Court finds it appropriate to stay the entire case

25         (other than the Ninth claim for declaratory relief, which is dismissed) until

26         the ongoing state criminal proceeding is resolved.

27  (*Id*. at *7 (emphasis added).)

28         In the present case, all the parties have the opportunity to pursue their claims in the

**SILVER & WRIGHT** LLP

state court action.  Plaintiffs William Robert Herrera and Palmdale Lodging LLC are named defendants in the state court action.  William Herrera can adequately represent his wife and children's claims or they can intervene in the state court action.

### C.   The Court Can Apply Younger Abstention To Plaintiffs' Fair Housing Act Claims.

Abstention also applies to the Fair Housing Act claim.  *Younger* abstention is proper "not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  The Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." (*Pennzoil Co. v. Texaco Inc*., 481 U.S. 1, 11 [107 S.Ct. 1519, 1526-1527, 95 L.Ed.2d 1] (1987).)  In *Juidice*, *supra*, 430 U.S. at 337, the Supreme Court held that a federal court should have abstained from adjudicating a challenge to a state's contempt process.  This includes state court proceedings ancillary to enforcement of a judgment.  It is sufficient that the federal claims have been or could be presented in the state proceedings.  (*Lebbos v. Judges of Superior Court, Santa Clara County*, 883 F2d 810, 815 (9th Cir. 1989) (an unlawful detainer proceeding by state court receiver as part of effort to enforce judgment).)  "The burden rests on appellants to show that they were barred from raising their federal claims in the unlawful detainer action."  (*Id.*)

Plaintiffs, as part of their Federal Housing Act claim, are asking the court for "injunctive relief enjoining the Defendant City, and City and County officials, from closing the operation of the motel, and from evicting the plaintiffs from their personal residence."  (FAC, ¶ 69.)  *Younger* abstention applies to injunctive relief.  (*Gilbertson*, *supra*, 381 F.3d at 968.)  Plaintiffs housing discrimination claims can adequately be addressed in the state court proceedings.  Furthermore, Plaintiffs have failed to present any case law stating *Younger* abstention does not apply to the Federal Housing Act.

**Even assuming that *Younger* abstention does not apply to Plaintiffs' Federal**

SILVER & WRIGHT LLP

**Housing Act claim, as set forth below, Plaintiffs' Fair Housing Act claim should be dismissed without leave to amend for failing to state a claim for which can be granted.**

Thus, the Court should apply the *Younger* abstention doctrine to dismiss this action in its entirety, or at a minimum stay the action pending the outcome of the state court action.

**III.   PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENTLY COGNIZABLE CLAIMS FOR VIOLATION OF THEIR CIVIL RIGHTS UNDER 42 U.S.C. SECTION 1983.**

**A.   Plaintiffs Have Failed To State A Claim For Violation Of Their First Amendment Right Of Access Under Petition For Grievances**.

Plaintiffs have failed to oppose the City's Motion to Dismiss the claim for alleged violation of the First Amendment.  Hence, the Court should dismiss this claim without leave to amend.

**B.   Plaintiffs Have Failed To State A Claim For Violation Of Their Fourth Amendment Rights.**

Plaintiffs contend in their Opposition that the City entered the Subject Property after its initial inspection and closed the Subject Property without consent and without a court order in violation of the Fourth Amendment.  (Opp., p. 2, ln.3 – p. 8 ln. 5.)  However, nowhere in the FAC does it allege that City personnel took any action inconsistent with the Fourth Amendment on November 21, 2016, December 13, 2016, December 15, 2016, or upon any other date.  Plaintiffs' bare assertion that City personnel entered upon the Subject Property on those dates is far from sufficient to establish a Fourth Amendment claim.

Mere entry upon a property—even if it is without consent and without a warrant—does not constitute an unlawful search or seizure under the Fourth Amendment.  To amount to an unlawful search under the Fourth Amendment, the City must have entered and searched an area where Plaintiffs had a reasonable expectation of privacy.  (See

SILVER & WRIGHT LLP

*California v. Ciraolo*, 476 U.S. 207, 211 [106 S.Ct. 1809, 1811, 90 L.Ed.2d 210] (1986).) However, Plaintiffs never allege that City personnel ever inspected, searched, or otherwise entered upon any part of the Subject Property where Plaintiffs had a reasonable expectation of privacy without a warrant.  In *Patel v. City of Montclair*, 798 F.3d 895, 898 (9th Cir. 2015), a case Plaintiffs' attorney Frank Weiser himself argued and lost on appeal, the Ninth Circuit specifically stated that a "police officer's entry onto the areas of the [motel] open to the public did not constitute a search within the meaning of the Fourth Amendment."  Plaintiffs never assert in the FAC that the City entered upon any area of the Subject Property without a warrant that was not open to the public.

On November 21, 2016, the City properly and lawfully inspected the Subject Property pursuant to an inspection warrant, which is incorporated by reference into the FAC.  (RJN Ex. A [Inspection Warrant].)  The inspection warrant specifically authorized inspection of "**all** areas of the interior and exterior of all buildings, structures, units, room, garages, basements attics, sheds, yards, storage facilities, drawers, and compartments located on the Subject Property." (*Id.* (emphasis added).)  Thus, the City's inspection of the Subject Property on November 21, 2016 was fully authorized by law pursuant to the inspection warrant and thus not in violation of the Fourth Amendment.

Plaintiffs allege that on December 13, 2016 the City entered upon the Subject Property to issue a Notice and Order to Repair or Abate ("N&O") and a Notice to Vacate. (FAC, ¶ 30; RJN, Ex. B [N&O] & Ex. C [Notice to Vacate].)  Plaintiffs further allege that on December 15, 2016 the City came on the Subject Property to close the motel and evict and vacate the tenants.  (FAC, ¶ 33.)  Plaintiffs claim that these actions constitute an unlawful seizure of the Subject Property in violation of the Fourth Amendment.  (Opp., p. 2, lns. 14–19.)  However, Plaintiffs cite no case law or any other legal authority showing that the Fourth Amendment requires issuance of a warrant, in the context of a notice to vacate a substandard building due to imminent health and safety dangers.

Plaintiffs cite *U.S. v. Jacobsen*, 466 U.S. 109, 113 [104 S.Ct. 1652, 1656, 80 L.Ed.2d 85] (1984), for the principle that "a 'seizure' of property occurs when there is

some meaningful interference with an individual's possessory interests in that property."
(Opp., p. 2, lns. 8–11.)  However, *U.S. v. Jacobsen* had absolutely nothing to do with a
substandard motel building where known conditions created a substantial and immediate
hazard to occupants and the public.  *Jacobsen* concerned the seizing of cocaine from a
shipping container after enforcement officials already knew the unlawful nature of its
contents.  (*Id*. at 121.)  Moreover, even in that case, the Supreme Court found that the
search and seizure did <u>not</u> require a warrant.  (*Id*.)

Plaintiffs also cite *Conner v. City of Santa Ana*, 897 F.2d 1487, 1489 (9th Cir.
1990), for the proposition "entries onto private land to search for and abate suspected
nuisances" require issuance of a warrant. [3]  (Opp., p. 2, lns. 19–24.)  In *Conner*, the police
"scaled the fence" to enter onto Conner's private property to write down the vehicle
numbers on inoperable vehicles.  City officials, again without a warrant, broke down the
fence surrounding Conner's property and removed two of the vehicles from the property.
The vehicles were hauled away and later destroyed.  No allegations exist that the two
seized vehicles posed any immediate health and safety danger to public.  (*Id*.)

Plaintiffs' reliance on *Conner* is misplaced.  Unlike *Conner*, in the present case,
the City did not scale any fences or search any property without a warrant.  Nor did the
City seize any automobiles or property.  Plaintiffs still have the Subject Property and can
enter the Subject Property to make the necessary repairs.  Certainly, the City's entering
upon the Subject Property on December 13, 2016 to issue a Notice to Vacate and on
December 15, 2016 to ensure compliance is broadly related to the City's having
previously discovered substantially dangerous emergency threats to the safety and lives
of the motel occupants and public on the Subject Property pursuant to a valid inspection
warrant.  However, the City's conduct to close and vacate the Subject Property is not itself
an action to abate a nuisance or a seizure under the Fourth Amendment.  Rather, it was
an action undertaken to protect the public from imminent health and safety hazards and

SILVER & WRIGHT LLP

---

[3] A strong dissenting opinion stated no warrant was necessary to abate the vehicles on second entry.

dangerous emergencies as authorized by statutory law.  The situation in *Conner* was quite different where police broke down a private fence to abate a nuisance by removing two vehicles that clearly were not posing any emergency threat to the safety and lives of the public.

Here, Plaintiffs have failed to allege that the City entered any **non-public** areas of the motel on December 13, 2016 and December 15, 2016 regarding the posting of the Notice to Vacate.  (See *Patel*, *supra*, 798 F.3d at 898 (police do not violate the Fourth Amendment when they enter an area of a private, commercial property open to the public (in this case, public areas of a motel).)  Even assuming that City personnel entered any non-public area of the motel on December 13, 2016 and December 15, 2016, the situation in the instant case -- red-tagging an unsafe building presenting dangerous emergencies to the health and safety of the motel occupants and public -- is more akin to "warrantless entry justified by an emergency such as a fire" identified in *Conner*.  (*Conner*, *supra*, 897 F.2d at 1489, n. 5.)  *Conner* thus provides no support for Plaintiffs' Fourth Amendment claim.

It simply is not the case that these actions are subject to the warrant requirements of the Fourth Amendment, and Plaintiffs have cited no case law suggesting otherwise.

The Fourth Amendment declares:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"This provision contains two separate and independent clauses.  The first proscribes 'unreasonable searches and seizures,' and the second prescribes the narrow conditions under which a warrant may issue.  Nothing in the text suggests that warrants are required for every search or seizure, nor is the existence of a warrant a *sine qua non* for a reasonable search or seizure.  While the text plainly mandates reasonableness in the seizure, it does

SILVER & WRIGHT LLP

not instruct whether a warrant is necessary to ensure the reasonableness of the City's demolition order." (*Freeman v. City of Dallas*, 242 F.3d 642 (5th Cir. 2001) (en banc).) In *Freeman*, the court held the City's "seizure and demolition of plaintiffs' apartment buildings, after those structures were condemned according to City ordinance and state law, were reasonable under the Fourth Amendment." (*Id.* at 654.) "What is sought by these plaintiffs is not protection against an unregulated search for evidence of wrongdoing, but additional protection to forestall the result of already-determined wrongdoing." (*Id.* at 651; see also *Hroch v. City of Omaha,* 4 F.3d 693, 697 (8th Cir. 1993) (similarly balancing governmental and private interests and concluding that the implementation of a condemnation order and demolition of building did not amount to an unreasonable seizure).)

Cities are constitutionally authorized to make and enforce within their limits all local, police, and sanitary ordinances and other such regulations not in conflict with the general laws. (Cal. Const., Art. XI, § 7.)  Government Code section 38771 provides, "By ordinance the city legislative body may declare what constitutes a nuisance."

The City issued the N&O pursuant to established state housing laws codified in California Health and Safety Code ("HSC") section 17980.6 and Palmdale Municipal Code Chapter 8.  (See RJN, Ex. B [N&O].)  The City also issued the Notice to Vacate pursuant to the Uniform Housing Code ("UHC") sections 1103 and 1104, Uniform Code for Abatement of Dangerous Buildings ("UCADB") sections 403(2) and 404, and Palmdale Municipal Code Chapter 8.04.  (See also HSC, § 17980(c)(1); RJN, Ex. C [Notice to Vacate].)  As specifically set forth in UHC section 1104.2 and UCADB section 404.2, **the City's issuance of the Notice to Vacate constitutes an "emergency" procedure that is simply not subject to a warrant requirement**.  (See *U.S. v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).)  Fourth Amendment case law sets forth clear and well-established exceptions to the warrant requirement for exigent circumstances and emergencies.  (*Mincey v. Arizona*, 437 U.S. 385, 392 [98 S.Ct. 2408, 2413, 57 L.Ed.2d 290] (1978) ("The need to protect or preserve life or avoid serious injury is justification

SILVER & WRIGHT LLP

– 13 –

for what would be otherwise illegal absent an exigency or emergency."); *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 [126 S.Ct. 1943, 164 L.Ed.2d 650] (2006).)  Therefore, even if a Notice to Vacate were theoretically a seizure, it would not require a warrant because well-established case law carves out clear exceptions for emergency situations.

Thus, Plaintiffs' Fourth Amendment claim fails to state a claim for which relief can be granted.

**C.   Plaintiffs Have Failed To State A Claim For A Fifth Amendment Takings, And A Takings Claim Is Not Ripe For Adjudication**.

The Ninth Circuit has explicitly noted that a municipality "has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code." (*Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851,856-57 (9th Cir. 2007).)  The Supreme Court has made it abundantly clear that the "public use" requirement is coterminous with the scope of a sovereign's police power, and that where a taking is "rationally related to a conceivable public purpose" the taking is not proscribed by the Public Use Clause.  (See *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241 [104 S.Ct. 2321, 2329, 81 L.Ed.2d 186] (1984); *Berman v. Parker*, 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27] (1954) (upholding legislation providing for taking of slum areas for possible sale or lease to private interests).)

In Plaintiffs' opposition, they concede no "public use taking" has occurred.  Instead they contend they have alleged a "private taking".  (Opp., p. 16, lns. 5-27.)  Plaintiffs' reliance on *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc), *overruled in part on other grounds as stated in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852–53 (9th Cir. 2007), does not apply here.  In *Armendariz*, **Plaintiffs had lost their property through foreclosures.**  Furthermore, in *Armendariz*, a commercial developer had met with city officials to discuss and plan a proposed commercial center on property then occupied by plaintiffs' buildings.  The developer and officials discussed methods of preventing plaintiffs from renting vacant apartments and removing utility meters, which would require additional permits.  The buildings were closed for as many

SILVER & WRIGHT LLP

as six weeks before the owners were informed why their properties had been closed.  (See *Walnut Hill Estate Enterprises, LLC v. City of Oroville*, WL 3781038 at *1, *8 (E.D. Cal. Nov. 10, 2009), *aff'd* 407 Fed.Appx. 168 (9th Cir. 2010), disagreeing with *Armendariz*.) The *Walnut Hill* court noted that in *Armendariz* there were no correction notices issued regarding problems sent prior to evacuation of the buildings.

In the present case, the City obtained an inspection warrant on November 17, 2016, to investigate the extent of violations on the Subject Property and executed the inspection warrant on November 21, 2016.  (FAC, ¶¶ 19, 21; RJN, Ex. A [Inspection Warrant].) During that inspection, City inspectors identified at least 427 dangerous violations of State and local laws on the Subject Property.  On December 13, 2016, the City issued a Notice and Order to Repair or Abate identifying 427 violations and ordering that all violations be fully repaired or abated within 30 calendar days, on or before January 12, 2017.  (RJN, Ex. B [N&O].)  On December 15, 2016, the building was red tagged for emergency health and safety concerns.  On or about January 13, 2017, the City re-inspected the Subject Property and confirmed that nearly all the unlawful and dangerous conditions remain on the Subject Property and discovered new violations.  (RJN, Ex. D [City's State Court Complaint § 19].)  Plaintiffs **still own the building**, unlike in the *Armendariz* case.

Thus, Plaintiffs' Fifth Amendment claim fails to state a claim for which relief can be granted and is not ripe as no "taking" has occurred since Plaintiffs still own the building.

## D.   Plaintiffs Have Failed To State A Claim For Violation Of Procedural Due Process.

In Plaintiffs' opposition, they state: "The process that was due in this case under the Fourteenth Amendment as a state statutory entitlement as codified in California Code of Civil § 1822.5 dealing with administrative warrants to close the motel."  (Opp., p. 8, lns. 7-10.)  The City complied with § 1822.5 et. seq. and submitted a copy of the inspection warrant as Exhibit A to City's Request for Judicial Notice.

SILVER & WRIGHT LLP

Plaintiffs acknowledge in their opposition that "[t]he Supreme Court has stated that either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of [post-deprivation] procedure, can satisfy the requirements of procedural due process." (Opp., p. 10, lns. 5-11.)  The Supreme Court does not require a hearing, just some type of post-deprivation procedures.  The *Patel* case cited by Plaintiffs in their opposition only states Plaintiffs are entitled to "an opportunity to be heard after the closure of the motel." (*Patel v. Penman,* 103 F.3d 868, 878 (9th Cir. 1996), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).)  There is no requirement of any formal post-deprivation hearing.

Plaintiff William Herrera admits that, on January 23, 2017, he, Plaintiff Mona Herrera, and their attorney met with City officials "in a good faith attempt to resolve issues that would permit reopening the motel." (March 14, 2017 Decl. of William Herrera in Opposition to City's Ex Parte Application in the State Court Action [RJN, Ex. G, ¶ 31, p. 10, ln. 26 – p. 11, ln.  3].)  Thus, Plaintiffs received sufficient post-deprivation due process.  The current post-deprivation due process and remedies available in the pending state court action for nuisance abatement also provide Plaintiffs with more than adequate post-deprivation procedures.  (RJN, Ex. D.)  In addition, Plaintiffs could have filed a writ of mandate in state court to challenge any post-deprivation deficiencies in due process. (See *Conner*, *supra*, 897 F.2d at 1493) (rejecting a due process challenge in part because the complaining party had a right to request judicial review of the seizure of their property, a nuisance, even if they did not exercise it).)

Thus, Plaintiffs' procedural due process claim fails to state a claim for which relief can be granted.

### E.   Plaintiffs Have Failed to State A Claim For Violation Of Substantive Due Process.

Plaintiffs acknowledge in their opposition that to state a cognizable substantive due process claim, a plaintiff must establish that defendants' actions were "clearly

SILVER & WRIGHT LLP

arbitrary and unreasonable" and "could have no legitimate reason for its decision." (Opp., p.15, lns. 6-10.)  Plaintiffs' arguments are misleading as this is not a land use case, which Plaintiffs admit in their opposition.  (Opp., p. 21, ln. 10.)  Instead, this case is a code enforcement -- use of police powers to enforce the public health and safety case.

Plaintiffs cite to *Koontz v. St. Johns River Water Management District*, --U.S.--, 133 S.Ct. 2586 [186 L.Ed. 697] (2013), in support of its argument.  However, *Koontz* is a **land use** case in which a landowner claimed he was wrongfully denied a permit to build.  (*Id. at* 2589.)  The Supreme Court held, "monetary exactions" as a condition of **a land use permit** must satisfy requirements that government's mitigation demands have an essential nexus and rough proportionality to the impacts of a proposed development.  (*Id*. at 2595.)  That is not the standard in the present code enforcement, public safety case.

Plaintiffs cite to *County of Sacramento v. Lewis*, 523 U.S. 833 [118 S.Ct. 1708, 10 L.Ed. 2d 1043] (1998), which held the appropriate degree of fault for substantive due process liability for high-speed police pursuits is deliberate indifference to, or reckless disregard for, a person's right to life and personal security.  (*Id*. at 833)  The court stated: "To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."  (*Id.* at 846.)

Plaintiffs also cite to *Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006), in which a non-custodial mother brought civil rights action against custodial father and a police officer, alleging that defendants engaged in conspiracy to violate her due process rights, in connection with interference with her visitation rights.  In *Brittain*, the Ninth Circuit stated: "Substantive due process protects individuals from arbitrary deprivation of their liberty by government.  The court has repeatedly 'spoken of the cognizable level of executive abuse of power as that which shocks the conscience.' … '[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense.'  Such conduct can be shown by conduct intended to injure in some way unjustifiable by any

SILVER & WRIGHT LLP

government interest."   In order to establish a constitutional violation based on substantive due process, plaintiffs must show both a deprivation of their liberty and conscience shocking behavior by the government.  (*Id.* at 991, citing *Lewis, supra* at 846-849 (internal quotations and citation omitted).)

The "shock the conscience" test has been applied in code enforcement cases.  In *Anderson v. Smith*, No. 1:06-CV-1795 OWW SMS, 2009 U.S. Dist., WL 2139311, at *18 (E.D. Cal. July 10, 2009), plaintiffs asserted that the unlawful acts of defendants resulted in the loss of their home in violation of their substantive due process rights. Plaintiffs' claim was grounded upon their assertion that their re-finance loan was cancelled because the city's employees contacted their lender.  Plaintiffs do not dispute, however, that once the home was red tagged, the city was required under the Uniform Housing Code to notify all parties with a financial interest in the home.  "Plaintiffs cite no authority for the proposition that loss of one's home, without more, implicates a substantive due process right protected by the Fourteenth Amendment. … The right to housing is not a fundamental right.*"*  (*Id.*, 2009 WL 2139311, at *18, citing *Lindsey v. Normet*, 405 U.S. 56 [92 S.Ct. 862, 31 L.Ed.2d 36] (1972).)  Substantive due process also "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty."  (*Anderson*, 2009 WL 2139311, at *18, citing *Corales v. Bennett,* 567 F.3d 554, 568 (9th Cir. 2009) (internal citations and quotations omitted).) "There is nothing shocking about the City of Clovis condemning the Harvard Avenue residence, a public nuisance, and then complying with the Uniform Housing Code." (*Anderson*, 2009 WL 2139311, at *18.).  Just as in the present case, there is nothing that "shocks the conscience" about posting a Notice to Vacate an unsafe and dangerous motel building.

Furthermore, a municipality's actions will not violate substantive due process "if it is at least fairly debatable" that the actions were **rationally related** to a legitimate government interest."  (*Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th

SILVER & WRIGHT LLP

Cir. 1994).)  Courts have recognized cities have a legitimate interest in enforcing the building code and that evacuation was at least rationally related to this interest.  (*Walnut Hill*, *supra*, 2009 WL 3781038 at *9.)

As Plaintiffs stated in the FAC, the City found "over four hundred (400) claimed violations of the PMC and state building and HSC codes" (FAC ¶ 30), and subsequently closed the motel (FAC, ¶ 33).  (See RJN, Exs. B and C.)  Like *Walnut Hill*, the dangerous health and safety emergencies provide more than a sufficient and rational basis for vacating the Subject Property.

Thus, Plaintiffs' attempt to plead a substantive due process claim fails as a matter of law.

## F.   Plaintiffs Have Failed To State A Claim For Violation Of The Equal Protection Clause.

A plaintiff asserting an equal protection claim must plead that the government intentionally discriminated against plaintiff based on his membership in a protected class (*Hartmann v. Cal. Department of Corrections and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose (*Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 [128 S.Ct. 2146, 170 L.Ed.2d 975] (2008)).

"An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff."  (*Walnut Hill*, 2009 WL 3781038 at *5, citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).)  "Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim."  (*Id.*)  "Selective enforcement of valid laws, without more, does not make the defendants' action irrational."  (*Freeman v. City of Santa Ana,* 68 F.3d 1180, 1188 (9th Cir. 1995) (rejecting an equal protection claim on the ground that defendants did not exercise their regulatory authority arbitrarily and capriciously).)

Under the rational basis review there is no constitutional violation if "there is any

SILVER & WRIGHT LLP

reasonably conceivable state of facts" that would provide a rational basis for the government's conduct. (*FCC v. Beach Communications, Inc*., 508 U.S. 307, 313–14, [113 S.Ct. 2096, 2101, 124 L.Ed.2d 211] (1993).) "The Ninth Circuit has explicitly noted that a municipality "has an obvious interest in preventing safety and sanitation hazards by enforcing the housing code." (*Walnut Hills,* 2009 WL 3781038 at * 5, citing *Armendariz,* 75 F.3d at 1327.)

In the FAC, Plaintiffs add an alleged claim that the prior owner was treated differently and argue that as the basis for an equal protection claim. The prior owner would not be "similarly situated" because he did not own the motel or any motel in the City at the time the motel was closed down for code violations. Furthermore, conflating all persons not injured into a preferred class receiving better treatment than Plaintiffs is not sufficient to state an equal protection claim. There are no allegations of "intentional discrimination" or that "there is no rational basis for the difference in treatment." Clearly the safety of guests of the motel and the surrounding community provided a compelling state interest.

Thus, Plaintiffs' attempt to plead an equal protection claim fails as a matter of law.

## G.   Plaintiffs Have Failed To State A Claim For Violation Of The Contract Clause.

Plaintiffs have failed to oppose the City's Motion to Dismiss the claim for alleged violation of the Contract Clause, Article I, section 10, of the United States Constitution. (FAC, ¶ 64, lns. 18-19.) Hence, the Court should dismiss this claim without leave to amend.

## IV.   PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A FEDERAL CIVIL RIGHTS CLAIM AGAINST THE CITY PURSUANT TO *MONELL*.

Even assuming Plaintiffs could assert that some constitutional violation occurred (which they cannot do), Plaintiffs FAC falls far short of stating a claim against the City

SILVER & WRIGHT LLP

by satisfying the pleading requirements of *Monell*.  In their opposition, Plaintiffs rely on an old 1988 case brought by a pro per defendant, *Karim-Panahi v. Los Angeles Police Dept,* 839 F.2d 621 (9th Cir. 1988), for the proposition that a "bare allegation that the individual officers' conduct conformed to official policy, custom, or practice" is sufficient to satisfy *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 61] (1978).  *Karim-Panahi* is not controlling as more recent Ninth Circuit cases state the bare bone allegations are **insufficient** to state a claim against the City pursuant to *Monell*.  To plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  (*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012), quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).)  Federal law **now** requires that a plaintiff plead sufficient factual allegations to "plausibly suggest an entitlement to relief" for all aspects of a *Monell* claim.  (*Id.*)

In this case, Plaintiffs are still unable to state in their FAC, filed after receiving the City's Motion to Dismiss the original Complaint, the name of the person whose conduct conformed to "official policy, custom or practice."  Plaintiffs argue in their opposition, "a final decision maker's decision to close the motel satisfies the 'official policy custom, or practice,' requirements."  (Opp., p. 18, lns. 10-12.)  However, Plaintiffs have failed to allege this anywhere in the FAC.  There are twenty-five named defendants plus the City and the County.  Clearly these bare bone allegations without specifically stating what each Defendant did is insufficient to put the City and or County on notice as required by *Monell*.  Nor have Plaintiffs been able to state what the "official policy, custom or practice" is.

Plaintiffs cite *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992), for the proposition that a final decisionmaker's decision to close the motel satisfies the "official policy, custom, or practice" requirements of *Monell*.  What *Oviatt* actually states is:

CITY'S REPLY TO PLAINTIFFS' OPPOSITION TO CITY'S MOTION FOR ABSTENTION
OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

"To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" (*Id.* at 1474, citing *City of Canton v. Harris,* 489 U.S. 378, 389 [109 S.Ct. 1197, 1205, 103 L.Ed.2d 412] (1989).)

Here, Plaintiffs have failed to allege what specific official custom or policy the City implemented to allegedly violate their Constitutional rights.  The FAC simply alleges that "Plaintiffs are informed and believe, and based upon such information and belief allege, that in doing all of the things herein mentioned, defendants, and each of them acted under color of the statutes, regulations, customs, and usages of the City of Palmdale and County of Los Angeles for the purposes of 'state action' under 42 U.S.C. Section 1983" (FAC, ¶ 63), and that Defendants "acted according to official policy, custom and practice of the Defendant City" (FAC, ¶ 65).  These conclusory allegations fail to provide any specific allegations to put the City on notice of how Plaintiffs intend to prove the City's liability under *Monell*.  In addition, the FAC fails to allege sufficient facts to establish that any claimed City policy or custom was the "moving force" behind their alleged constitutional injuries.  (*Oviatt*, *supra*, 954 F.2d at 1474.)

Plaintiffs have failed to properly plead liability against the City.  Hence, the FAC against the City should be dismissed.

## V.   PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THEIR CIVIL RIGHTS UNDER 42 U.S.C. SECTION 3604, AND THE COURT SHOULD DISMISS IT WITHOUT LEAVE TO AMEND.

Plaintiffs have failed to state how the City's actions in public health and safety code enforcement violated the Fair Housing Act, as codified in 42 U.S.C. section 3604 et seq.  The cases cited in Plaintiffs' opposition do not apply.  *U.S. v. Village of Palatine, Ill.*, 37 F.3d 1230, 1234 (7th Cir. 1994) was a zoning case, not a public health

SILVER & WRIGHT LLP

and safety code enforcement case, in which the Seventh Circuit vacated the preliminary injunction and remanded the case to the district court with instructions to dismiss the case as not ripe.  Nor is *Havens Realty Corp. v. Coleman*, 455 U.S. 363 [102 S.Ct. 1114, 71 L.Ed.2d 214] (1982) a public health and safety code enforcement case.  In *Haven*, an apartment complex owner told black applicants that apartments were not available while he told white applicants that apartments were available allegedly violating the Fair Housing Act's requirement of truthful information concerning the availability of housing.

The third and last case cited by Plaintiffs, *Growth Horizons, Inc. v. Delaware County Pennsylvania,* 983 F.2d 1277 (3rd Cir. 1991), dealt with a county's leasing of housing for the handicapped, not public health and safety code enforcement.  The Third Circuit agreed with the district court's conclusion that plaintiff had no meritorious claim under 42 U.S.C. section 3604(f)(1).  "As its text and legislative history evidence, the purpose of this statute is to protect the housing choices of handicapped individuals who seek to buy or lease housing and of those who seek to buy or lease housing on their behalf.  The conduct and decision-making that Congress sought to affect was that of persons in a position to frustrate such choices—primarily, at least, **those who own the property of choice** and their representatives."  (*Id.* at 1283 (emphasis added).)  "A public agency's refusal to pay for a given housing unit, even if influenced by bias against the handicapped, does not violate § 3604(f)(1)."  (*Id*. at 1284.)

Courts will dismiss claims alleging violations of the Fair Housing Act when the claims fail to state how the government's actions violated 42 U.S.C. section 3604.  (*City of Fort Lauderdale v. Scott*, 773 F.Supp.2d 1355, 1358 (S.D. Fla. 2011).)

Here, Plaintiffs merely allege that the City's actions have "had the effect of discriminating against plaintiffs based on their status based on race, color and/or national origin as plaintiffs are of Hispanic and Hawaiian Filipino origin, in violation of the 42 U.S.C. Section 3604, et seq., the Federal Fair Housing Act."  (FAC, ¶ 68.)  The FAC, however, is completely devoid of any allegation that the City owned the Subject Property

SILVER & WRIGHT LLP

or was involved in selling or renting the Subject Property.  Furthermore, this case does not involve a zoning issue or development approval.  Instead, this is a public health and safety code enforcement case for "over four hundred (400) claimed violations of the PMC and state building and HSC codes."  (FAC, ¶ 30.)  There was no intent to discriminate against anyone; this is a public health and safety code enforcement case.  Thus, as in *City of Fort Lauderdale*, these conclusory allegations cannot withstand a motion to dismiss.

As set forth above, Plaintiffs have failed to state a claim under the Fair Housing Act.  Since Plaintiffs cannot amend to state any such claim based on admissions made in the FAC, the Court should dismiss this claim without leave to amend.

## VI.    CONCLUSION.

For the foregoing reasons, the City respectfully requests that its Motion for Abstention, or, alternative, its Motion to Dismiss the First Amended Complaint be granted in its entirety.

Dated:  May 1, 2017

SILVER & WRIGHT LLP

By:   */s/ John M. Fujii*_____
MATTHEW R. SILVER
JOHN M. FUJII
NANCY R. TRAGARZ
Attorneys for Defendant
City of Palmdale

SILVER & WRIGHT LLP

CITY'S REPLY TO PLAINTIFFS' OPPOSITION TO CITY'S MOTION FOR ABSTENTION
OR IN THE ALTERNATIVE TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT